IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DENIZ CINAR AYDINER,                             6:11-cv-01300-MA

        Petitioner,                          OPINION AND ORDER

   v.

JEFF PREMO,

        Respondent.

PER C. OLSON,
Hoevet, Boise & Olson, P.C.
1000 S.W. Broadway, Suite 1500
Portland, Oregon 97205

   Attorney for Petitioner

ELLEN F. ROSENBLUM
Attorney General
SAMUEL A. KUBERNICK
Assistant Attorney General
Oregon Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096

   Attorneys for Respondent

MARSH, Judge

   Petitioner, an inmate at the Oregon State Penitentiary, brings this habeas corpus petition pursuant to 28 U.S.C. § 2254 seeking

1 - OPINION AND ORDER

relief on the grounds that the state trial court lacked personal jurisdiction over him, state and federal authorities violated his due process rights in procuring his arrest, and the state trial court violated his constitutional rights in quashing subpoenas and denying an evidentiary hearing on his motion to dismiss. Pet. (#1) at 2-3. For the reasons set forth below, the petition is DENIED.

## FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts are undisputed. On May 29, 2001, petitioner sexually assaulted and murdered Catherine Johnson, a student at the University of Portland. On February 5, 2003, while the murder investigation was ongoing, petitioner provided a DNA sample to Portland Police detectives as part of a broad-based effort to gather DNA samples from those who were acquainted with the victim. Resp.'s Exh. 117 at 3. Subsequently, petitioner traveled home to Turkey, the country of his citizenship. On March 26, 2003, petitioner attempted to re-enter the United States, but was prohibited from doing so because he had previously overstayed his visa. Id. Upon returning to Turkey, petitioner and his wife, a United States citizen, made ongoing efforts to obtain a visa for petitioner's return to the United States as the spouse of an American citizen. Id.

On June 3, 2003, Portland Police detectives received a report from the Oregon State Police Crime Lab indicating that petitioner's DNA was consistent with DNA samples obtained at the crime scene.

2 - OPINION AND ORDER

Id.  The next day, the Portland Police and Multnomah County District Attorney's Office determined that petitioner was in Istanbul, Turkey.  Id.  The District Attorney's Office contacted U.S. Department of Homeland Security (DHS) officials about petitioner's immigration status and was informed that petitioner and his wife were attempting to secure his re-entry into the United States.  Id. at 3-4.

On November 7, 2003, a warrant was issued for petitioner's arrest that was kept under seal and not entered into any local, national, or international databases.  Id. at 4.  Three days later, the Multnomah County District Attorney sent a letter to the Office of International Affairs of DHS requesting that petitioner be granted a "silent parole," by which petitioner would be allowed to re-enter the United States.  Id.  On December 15, 2003, petitioner's wife received an email from a DHS employee at the U.S. Embassy in Athens, Greece advising her that petitioner had been granted a waiver of ineligibility to re-enter the United States, and he was to contact the U.S. Embassy in Ankara, Turkey to follow up on his visa application.  Pet.'s Mem. in Supp. (#23) Exh. 3.

During his appointment at the U.S. Embassy in Ankara, petitioner provided a set of fingerprints, and was instructed that the Embassy in Ankara would retain his passport and new visa until petitioner purchased airline tickets and provided a copy to the Embassy.  Petitioner subsequently purchased an airline ticket back

3 - OPINION AND ORDER

to Portland, Oregon, and forwarded a copy to the Embassy. Shortly thereafter, petitioner received a package from the Embassy containing his passport, a three-day visa concluding the day he was scheduled to arrive in Portland, and a sealed envelope labeled "Do Not Open." Upon inquiring why his visa expired after three days, petitioner was informed that it would be extended upon his arrival in the United States. Resp.'s Exh. 117 at 4.

Meanwhile, on January 13, 2004, unbeknownst to petitioner, federal immigration officials lodged a detainer providing that an "[i]nvestigation has been initiated to determine whether [petitioner] is subject to removal from the United States." Pet.'s Mem. in Supp. Exh. 3. On January 16, 2004, petitioner returned to the United States. Upon his arrival in the United States, petitioner was arrested for the murder and sexual assault of Catherine Johnson. Ultimately, petitioner was indicted on eleven counts of Aggravated Murder, carrying a maximum penalty of death, one count of Kidnaping in the Second Degree, one count of Sexual Abuse in the First Degree, one count of Attempted Rape in the First Degree, two counts of Sodomy in the First Degree, and four counts of Burglary in the First Degree. Id.

Petitioner moved to dismiss the charges on the basis that the state court did not have personal jurisdiction over him because the government's efforts to facilitate petitioner's return to the United States violated the extradition treaty between Turkey and

4 - OPINION AND ORDER

the United States. To this end, petitioner served several subpoenas seeking documents and testimony about the details of the government's effort to bring petitioner back to the United States. The state trial court granted motions to quash the subpoenas, and declined to hear testimony in an evidentiary hearing because respondent stipulated to the facts concerning its efforts to return petitioner to the United States.

On June 27, 2005, the state trial court denied petitioner's motion to dismiss, and on July 12, 2005, a subsequent motion to reconsider. On October 4, 2005, petitioner filed a petition in this court for a writ of habeas corpus under 28 U.S.C. § 2241 and moved to stay the state court proceedings. This court abstained from exercising jurisdiction. Resp.'s Exh. 117. While petitioner's appeal from this court's judgment was pending, he conditionally pled no contest in state court to ten counts of Aggravated Murder, one count of Sexual Abuse in the First Degree, one count of Attempted Rape in the First Degree, two counts of Sodomy in the First Degree, and four counts of Burglary in the First Degree, reserving his right to appeal the denial of the motion to dismiss. Resp.'s Exh. 103. Petitioner agreed to a stipulated sentence of life imprisonment with the possibility of parole after 37 years. Id. at 14.

The Oregon Court of Appeals affirmed the trial court's denial of the motion to dismiss, exclusion of witness testimony at an

5 - OPINION AND ORDER

evidentiary hearing, and quashing of the subpoenas. Resp.'s Exh. 138; State v. Aydiner, 228 Or.App. 282, 208 P.3d 515 (2009). The Oregon Supreme Court denied review. Resp.'s Exh. 140; State v. Aydiner, 347 Or. 259, 218 P.3d 541 (2009). The United States Supreme Court denied certiorari. Aydiner v. Oregon, 131 S.Ct. 530 (2010).

Petitioner subsequently filed the instant petition alleging three grounds for relief. In Ground One, petitioner argues that state and federal officials' actions in facilitating his return to the United States violated the extradition treaty between Turkey and the United States (the Treaty). Pet. at 2-3. In Ground Two, petitioner maintains that state and federal officials' actions violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Pet. at 3. Finally, in Ground Three, petitioner argues that the state trial court's quashing of petitioner's subpoenas and denial of an evidentiary hearing on his motion to dismiss violated the Due Process Clause of the Fourteenth Amendment and the Compulsory Process Clause of the Sixth Amendment to the United States Constitution. Pet. at 3.

## DISCUSSION

A federal court may not grant habeas corpus relief unless the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States;" or was "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1), (2); Harrington v. Richter, ___ U.S. ___, 131 S.Ct. 770, 785-86 (2011). Factual findings of the state courts are presumed to be correct, and this presumption may only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

I. **Ground One**

In Ground One, petitioner argues that the state court lacked personal jurisdiction over him because the state and federal officials' actions in facilitating his return to the United States violated the Treaty. Petitioner maintains that "by devising and executing a scheme of trickery and deceit to lure the petitioner into this country from Turkey for the purpose of arresting him on a warrant," the government violated the extradition treaty which, petitioner maintains, was the exclusive legal means of returning petitioner to the United States for prosecution. Therefore, petitioner argues the state trial court lacked personal jurisdiction over him.

The state trial court denied plaintiff's motion to dismiss because it found "the Treaty was not violated by the actions of state or federal officials in this case." Pet.'s Mem. in Sup. Exh. 3. The Oregon Court of Appeals affirmed, relying on United States

7 - OPINION AND ORDER

v. Alvarez-Machain, 504 U.S. 655 (1992), and holding that "the signatories to the treaty did not intend the extradition process to be exclusive," and the state and federal officials' actions in facilitating petitioner's return therefore did not violate the Treaty. Aydiner, 228 Or.App. at 289. I conclude that the Oregon Court of Appeals' decision was neither contrary to nor an unreasonable application of clearly established federal law.

The Treaty provides:

> The Contracting Parties undertake to surrender to each other, in accordance with the provisions and conditions laid down in this Treaty, all persons who are found within the territory of the Requested Party and who are being prosecuted for or have been charged with an offense, or convicted of an offense, or are sought by the other Party for the enforcement of a judicially pronounced penalty for an offense committed within the territory of the Requesting Party.

Extradition and Mutual Assistance in Criminal Matters, U.S.-Turk. art. 1(1), June 7, 1979, 32 U.S.T. 3111. In addition, the Treaty further provides that neither party is required to extradite its own nationals, but if the Requested Party refuses to extradite one of its nationals, then it must, upon request, submit the case to its legal authorities. Id. art. 4(1)-(2). Articles 6 and 7 of the Treaty provide extensive requirements for the form and content of extradition requests. Id. arts. 6-7.

The United States Supreme Court first considered the present issue in Ker v. Illinois, where it held that the forcible kidnaping of the defendant - who was charged with larceny in Illinois - did

8 - OPINION AND ORDER

not violate the extradition treaty between the United States and Peru because the "treaty was not called into operation, was not relied upon, [and] was not made the pretext of the arrest." 119 U.S. 436, 443 (1886). Similarly, in Alvarez-Machain, the Court looked to the text of the extradition treaty between the United States and Mexico to determine whether the United States' arrangement for the defendant's forcible kidnaping in Mexico violated the extradition treaty.[1] 504 U.S. at 662-63. Noting that "[t]he Treaty says nothing about the obligations of the United States and Mexico to refrain from forcible abductions of people from the territory of the other nation," the Court held that "the language of the treaty, in the context of its history, does not support the proposition that the Treaty prohibits abductions outside of its terms." Id. at 663, 666. The Court, therefore, concluded that the defendant's "abduction was not in violation of the Extradition Treaty between the United States and Mexico, and therefore the rule of Ker v. Illinois is fully applicable to this case." Id. at 670.

---

[1] In Alvarez-Machain, the defendant was suspected of participating in the kidnaping, murder, and torture of a Drug Enforcement Administration special agent. 504 U.S. at 657. After informal negotiations with the Mexican government to turn over the defendant broke down, the United States offered a bounty to have the defendant kidnaped and delivered to El Paso, Texas by private airplane. Id. at 657 n.2.

The Oregon Court of Appeals properly relied on <u>Ker</u> and <u>Alvarez-Machain</u> in finding that the facilitation of petitioner's return to the United States did not violate the Treaty. Petitioner is doubtlessly correct, as the Oregon courts found and respondent readily concedes, that he could not have been extradited under the Treaty because he is a Turkish national and because his charges in the United States carried a potential death penalty. Nothing in the Treaty, however, provides that a person's return to the United States cannot be facilitated by means other than the extradition process. Rather, "[t]he Treaty . . . provides a mechanism which would not otherwise exist, requiring, under certain circumstances, the [parties] to extradite individuals to the other country, and establishing the procedures to be followed *when the Treaty is invoked.*" <u>Alvarez-Machain</u>, 504 U.S. at 664-65 (emphasis added).

The text of the Treaty as a whole demonstrates that the Court of Appeals' application of <u>Alvarez-Machain</u> was not unreasonable, and belies petitioner's argument that the Treaty is materially distinguishable from the treaty at issue in <u>Alvarez-Machain</u> because the Treaty at issues here requires the parties to surrender all persons found within the territory of the Requested Party who are being prosecuted for a listed offense. Pet.'s Mem in Supp. at 20-21. As the Oregon Court of Appeals noted, the Treaty's relevant provisions' usage of the terms "Requested" and "Requesting" parties

makes clear that its applicability requires the submission of an extradition request. See Aydiner, 228 Or.App. at 289. In addition, the Court of Appeals' construction of the Treaty is further supported by the extensive and specific requirements for submission of an extradition request in Articles 6 and 7 of the Treaty.

Moreover, the Oregon Court of Appeals' interpretation of the Treaty and application of Supreme Court precedent is supported by subsequent case law from the Ninth Circuit Court of Appeals applying Alvarez-Machain. See LaJoie v. Thompson, 217 F.3d 663, 669 n.6 (9th Cir. 2000) ("It is appropriate to look to lower court decisions to determine what law has been 'clearly established' by the Supreme Court and the reasonableness of a particular application of that law."). In United States v. Struckman, the Ninth Circuit held that "[a]s in Alvarez-Machain, the Extradition Treaty [between the United States and Panama] does not provide that extradition is the exclusive means for one signatory to obtain a criminal defendant or fugitive from the territory of the other." 611 F.3d 560, 572 (9th Cir. 2010). The language of the extradition treaty between the United States and Panama is similar to the treaty between the United States and Turkey, as the Panamanian treaty provides that the parties "mutually agree to *deliver up persons* who, having been charged with or convicted of any of the

11 - OPINION AND ORDER

crimes and offenses specified in the following article, committed within the jurisdiction of one of the contracting parties, shall seek an asylum *or be found within* the territories of the other." Providing for the Extradition of Criminals art. I, U.S.-Pan., May 25, 1904, 34 Stat. 2851 (emphasis added). Thus, the Ninth Circuit's decision in Struckman provides further support for the Oregon Court of Appeals' interpretation and application of Alvarez-Machain and Ker.

In sum, I conclude that the state courts' holding that the government's actions did not violate the Treaty was neither contrary to nor an unreasonable application of clearly established federal law. Therefore, habeas relief is inappropriate on Ground One. See 28 U.S.C. § 2254(d)(1).

## II. Ground Two

In Ground Two, petitioner alleges that state and federal officials' actions in facilitating his return to the United States violated his due process rights. The Oregon Court of Appeals found that petitioner's due process rights were not violated by the circumstances under which he returned to the United States. Aydiner, 228 Or.App. at 289-90. Petitioner makes two arguments in support of this ground for relief. First, petitioner argues that because state and federal officials violated the Treaty, his due process rights were also violated. Second, petitioner asserts that

the government's admitted misrepresentations to him in the course of his "silent parole" back into the United States violated the Due Process Clause.[2]

Petitioner's due process argument is foreclosed by Ker and Frisbie v. Collins, 342 U.S. 519 (1952). In Ker, the Court noted that due process was not violated by "mere irregularities in the manner in which [the defendant] may be brought into the custody of the law." 119 U.S. at 440. The Court affirmed this principle in Frisbie, stating that "the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.'" 342 U.S. at 522.

The methods by which the government facilitated petitioner's return to the United States do not offend due process of law. The parties agree that the government used some degree of deception in facilitating petitioner's return. Indeed, Embassy officials told petitioner that he had been granted a waiver of his ineligibility to re-enter the United States when, in fact, he had been silently paroled. Federal officials also informed petitioner that his visa would be extended upon his arrival into the United States, when, in fact, the government knew that he would be arrested upon arrival and filed an immigration detainer in anticipation of his return.

---

[2] Because I held above that the government did not violate the Treaty, I address only petitioner's second argument below.

13 - OPINION AND ORDER

This conduct by the government falls well short of the seriousness of the conduct in <u>Ker</u> and <u>Frisbie</u> that the Court found *did not* violate due process. This is especially the case considering the "trickery" the government employed in this case only served to facilitate the fulfillment of petitioner's own desire to return to the United States. As <u>Ker</u> and <u>Frisbie</u> make clear, these actions by the state and federal officials seeking to facilitate petitioner's return to the United States did not violate his due process rights so as to deprive the state court of personal jurisdiction over petitioner. Therefore, the Oregon Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established federal law. Habeas relief is unwarranted on Ground Two. <u>See</u> 28 U.S.C. § 2254(d)(1).

### III. **Ground Three**

In Ground Three, petitioner argues that the state trial court's denial of an evidentiary hearing and quashing of subpoenas on his motion to dismiss violated the Compulsory Process and Due Process Clauses. The state trial court granted motions to quash subpoenas served on City of Portland and DHS officials, and excluded the testimony of witnesses at an evidentiary hearing on petitioner's motion to dismiss.

In rejecting petitioner's argument in this respect, the Oregon Court of Appeals held that "[t]he details of the government's

conduct beyond the stipulation that local and federal government employees deliberately tricked defendant are irrelevant and would have no impact on our foregoing analysis of whether he was entitled to dismissal of the charges against him." Aydiner, 228 Or.App. at 290.

The Compulsory Process Clause guarantees a criminal defendant "'compulsory process for obtaining *witnesses in his favor*.'" United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982) (quoting U.S. Const., Amdt. 6) (emphasis in original). Thus, "more than the mere absence of testimony is necessary to establish a violation of the right." Id. Rather, petitioner "must at least make some plausible showing of how [the proposed witnesses'] testimony would have been both material and favorable to his defense." Id. The standard for petitioner's due process claim on this ground is "at least the same." Id. at 872.

The state courts' finding that the proposed witnesses and subpoenaed documents were neither material nor favorable to petitioner's motion to dismiss is entitled to deference. As discussed above, respondent stipulated to the facts concerning how the government facilitated petitioner's return to the United States. Those facts were accepted by the state trial court and informed its analysis on petitioner's motion to dismiss. Any unknown details that exist in the interstices of the stipulated

facts could not have made a difference in the substantive analysis of petitioner's motion to dismiss. Additionally, I note that petitioner has made no "plausible explanation of the assistance he would have received" from the testimony of the subpoenaed witnesses or requested documents, as required by Valenzuela-Bernal. Id. at 871. The Oregon Court of Appeals' determination that the state trial court's quashing of the subpoenas and denial of an evidentiary hearing was neither contrary to, nor an unreasonable application of, clearly established federal law. Habeas relief is inappropriate on Ground Three. See 28 U.S.C. § 2254(d)(1).

## CONCLUSION

For the foregoing reasons, petitioner's petition for a writ of habeas corpus (#1) is DENIED. Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is DENIED. See 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this **10** day of October, 2013.

                                         *Malcolm F. Marsh*
                                         Malcolm F. Marsh
                                         United States District Judge